IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA


DANIEL GLASS,

              Plaintiff,                        06cv1558

                                                 **ELECTRONICALLY FILED**

   v.


JO ANNE B. BARNHART, COMMISSIONER
OF SOCIAL SECURITY,

              Defendant.


**MEMORANDUM OPINION**

**September 27, 2007**

    **I.**      **Introduction**

    Plaintiff Daniel Glass brings this action pursuant to 42 U.S.C. § 405(g) of the Social

Security Act ("Act"), seeking review of the final determination of the Commissioner of Social

Security ("Commissioner") denying his application for  Disability Insurance Benefits ("DIB")

and Supplemental Security Income ("SSI") under titles II and XVI of the Act. Consistent with the

customary practice in the Western District of Pennsylvania, the parties have submitted cross

motions for summary judgment and the record developed at the administrative proceedings.

    After careful consideration of the Administrative Law Judge's ("ALJ's") Decision, the

memoranda of the parties, and the entire record, the Court finds the ALJ's decision is not

supported by substantial evidence, and therefore will grant Plaintiff's motion for summary

judgment, deny the Commissioner's motion for summary judgment, and remand the case to the

Commissioner for further proceedings.

II.     **Procedural History**

Plaintiff initially applied for SSI and DIB on September 22, 2004, alleging disability since May 15, 2004, due to a neck impairment (degenerative disc disease C5-C6, C6-C7 and C7 radiculopathy) that required surgery.  Following administrative denial of benefits, plaintiff appealed and a hearing was conducted before ALJ Alma Deleon on November 16, 2005, at which plaintiff, represented by counsel, testified, as did a vocational expert ("VE").  On March 14, 2006, the ALJ denied the plaintiff's claim for benefits, finding that plaintiff was not disabled at any time through the date of the decision.  R. 21.  The ALJ further found that he retained the residual functional capacity ("RFC") to perform tasks at the light exertional level, lifting and carrying no more than 20 pounds, that does not involve overhead reaching, or more than limited pushing and pulling in his upper extremities, or performing repetitive movements with his right arm.

The ALJ made the following specific findings:

1.      The claimant meets the insured status requirements of the Social Security Act through December 31, 2009.

2.      The claimant has not engaged in substantial gainful activity at any time relevant to this decision.  (20 CFR 404.1520(b), 404.1571 et seq., 416.920(b) and 416.971 et seq.).

3.      The claimant has the following severe impairments: degenerative disc disease C5-C6, C6-C7 and C7 radiculopathy (20 CFR 404.1520(c) and 416.920(c)).

4.      The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5.      After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform work at the light exertional level lifting and carrying no more than 20 pounds, that does not involve overhead reaching, or more than limited pushing and pulling in his upper extremities, or performing

repetitive movements with his right arm.

6.      The claimant is unable to perform any past relevant work (20 CFR 404.1565 and
        416.965).

7.      The claimant was born on July 10, 1951 and was 52 years old on the alleged
        disability onset date, which is defined as closely approaching advanced ago (20
        CFR 404.1563 and 416.963).).

8.      The claimant has a limited education and is able to communicate in English (28
        CFR 404.1564 and 416.964).

9.      The claim has transferable job skills from his past relevant work to other work
        within his residual functional capacity.  Vocational expert Kurtanich testified that
        the claimant possessed transferable skills from his past work to other work (20
        CFR 404.1568 and 416.968).

10.     Considering the claimant's age, education, work experience, and residual
        functional capacity, there are jobs that exist in significant numbers in the national
        economy that the claimant can perform (20 CFR 404.1560(c), 404.1566,
        416.960(c), and 416.966).

11.     The claimant has not been under a "disability," as defined in the Social Secuirty
        Act, from May 15, 2004 through the date of this decision (20 CFR 404.1520(g)
        and 416.920(g)).

R. 15-21.

On March 14, 2006, the Appeals Council affirmed the ALJ's decision, which thus

became the final decision of the Commissioner.  Plaintiff then filed his complaint herein seeking

judicial review of the Commissioner's final decision.

## II.     Standards of Review

Judicial review of  the Commissioner's final decisions on disability claims is provided by

statute.  42 U.S.C. §§ 405(g)[1] and 1383(c)(3)[2].  Section 405(g) permits a district court to review

---

[1] Section 405(g) provides in pertinent part:
        Any individual, after any final decision of the [Commissioner] made after a
        hearing to which he was a party, irrespective of the amount in controversy, may
        obtain a review of such decision by a civil action . . . brought in the district court

transcripts and records upon which a determination of the Commissioner is based.  Because the

standards for eligibility under Title II (42 U.S.C. §§ 401-433, regarding Disability Insurance

Benefits, or "DIB"), and judicial review thereof, are virtually identical to the standards under

Title XVI (42 U.S.C. §§ 1381-1383f, regarding Supplemental Security Income, or "SSI"),

regulations and decisions rendered under the Title II disability standard, 42 U.S.C. § 423, are

pertinent and applicable in Title XVI decisions rendered under 42 U.S.C. § 1381(a).  *Sullivan v.

Zebley*, 493 U.S. 521, 525 n. 3 (1990); *Burns v. Barnhart*, 312 F.3d 113, 119 n.1 (3d Cir. 2002).

<u>Substantial Evidence</u>

If supported by substantial evidence, the Commissioner's factual findings must be

accepted as conclusive.  *Ventura v. Shalala*, 55 F.3d 900, 901 (3d Cir. 1995); *Wallace v.

Secretary of HHS,* 722 F.2d 1150, 1152 (3d Cir. 1983). The district court's function is to

determine whether the record, *as a whole*, contains substantial evidence to support the

Commissioner's findings. *See Adorno v. Shalala*, 40 F.3d 43, 46 (3d Cir.1994) (*citing

Richardson v. Perales*, 402 U.S. 389, 401 (1971). The Supreme Court has explained that

"substantial evidence" means "more than a mere scintilla" of evidence, but rather, is "such

relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

---

of the United States for the judicial district in which the plaintiff resides, or has
his principal place of business. . .
42 U.S.C. § 405(g).

[2] Section 1383(c)(3) provides in pertinent part:
      The final determination of the Commissioner of Social Security after a
hearing under paragraph (1) shall be subject to judicial review as provided in
section 405(g) of this title to the same extent as the Commissioner's final
determinations under section 405 of this title.
42 U.S.C. § 1383(c)(3).

*Richardson,* 402 U.S. at 401 (citation omitted). *See Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005); *Ventura*, 55 F.3d at 901 (*quoting Richardson*); *Stunkard v. Secretary of HHS*, 841 F.2d 57, 59 (3d Cir. 1988).

The Court of Appeals for the Third Circuit has referred to this standard as "less than a preponderance of the evidence but more than a mere scintilla."*Burns v. Barnhart*, 312 F.3d 113, 118 (3d Cir. 2002), *quoting Jesurum v. Secretary of the Dep't of Health and Human Servs.*, 48 F.3d 114, 117 (3d Cir. 1995).  "A single piece of evidence will not satisfy the substantiality test if the Secretary ignores, or fails to resolve, a conflict created by countervailing evidence." *Mason v. Shalala,* 994 F.2d 1058, 1064 (3d Cir. 1993), *quoting Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983).  The substantial evidence standard allows a court to review a decision of an ALJ, yet avoid interference with the administrative responsibilities of the Commissioner.  *See Stewart v. Secretary of HEW*, 714 F.2d 287, 290 (3d Cir.1983).

In reviewing the record for substantial evidence, the district court does not weigh the evidence or substitute its own conclusions for those of the fact finder.  *Rutheford*, 399 F.3d at 552.  In making this determination, the district court considers and reviews only those findings upon which the ALJ based his or her decision, and cannot rectify errors, omissions or gaps in the medical record by supplying additional findings from its own independent analysis of portions of the record which were not mentioned or discussed by the ALJ. *Fargnoli v. Massarini,* 247 F.3d 34, 44 n.7 (3d Cir. 2001) ("The District Court, apparently recognizing the ALJ's failure to consider all of the relevant and probative evidence, attempted to rectify this error by relying on medical records found in its own independent analysis, and which were not mentioned by the ALJ. This runs counter to the teaching of *SEC v. Chenery Corp.*, 318 U.S. 80 (1943), that '[t]he grounds upon which an administrative order must be judged are those upon which the record

discloses that its action was based.' *Id.* at 87"; parallel and other citations omitted).

Five Step Determination Process

To qualify for DIB under Title II of the Act, a claimant must demonstrate that there is some "medically determinable basis for an impairment that prevents him or her from engaging in any substantial gainful activity for a statutory twelve-month period." *Kangas v. Bowen*, 823 F.2d 775, 777 (3d Cir. 1987); 42 U.S.C. § 423 (d)(1) (1982). Similarly, to qualify for SSI, the claimant must show "he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1383c(a)(3)(A).

When resolving the issue of whether a claimant is disabled and whether the claimant is entitled to either DIB or SSI benefits, the Commissioner utilizes the familiar five-step sequential evaluation. 20 C.F.R. §§ 404.1520 and 416.920 (1995). *See Sullivan*, 493 U.S. at 525. The Court of Appeals for the Third Circuit summarized this five step process in *Plummer v. Apfel*, 186 F.3d 422 (3d Cir.1999):

> In *step one*, the Commissioner must determine whether the claimant is currently engaging in substantial gainful activity. 20 C .F.R. § 404.1520(a). If a claimant is found to be engaged in substantial activity, the disability claim will be denied. . . . In *step two*, the Commissioner must determine whether the claimant is suffering from a severe impairment. 20 C.F.R. § 404.1520(c). If the claimant fails to show that her impairments are "severe", she is ineligible for disability benefits.

> In *step three*, the Commissioner compares the medical evidence of the claimant's impairment to a list of impairments presumed severe enough to preclude any gainful work. 20 C.F.R. § 404.1520(d). If a claimant does not suffer from a listed impairment or its equivalent, the analysis proceeds to steps four and five. *Step four* requires the ALJ to consider whether the claimant retains the residual functional capacity to perform her past relevant work. 20 C.F.R. § 404.1520(d). The claimant bears the burden of demonstrating an inability to return to her past relevant work. . . .

> If the claimant is unable to resume her former occupation, the evaluation moves to the final *step* [*five*]. At this stage, the burden of production shifts to the Commissioner, who must demonstrate the claimant is capable of performing other available work in order to deny a claim of disability. 20 C.F.R. § 404.1520(f). The ALJ must show there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and residual functional capacity. The ALJ *must analyze the cumulative effect of all the claimant's impairments* in determining whether she is capable of performing work and is not disabled. The ALJ will often seek the assistance of a vocational expert at this fifth step. . . .

*Plummer*, 186 F.3d at 428 (italics supplied; certain citations omitted). *See also Rutherford*, 399 F.3d at 551 ("In the first four steps the burden is on the claimant to show that she (1) is not currently engaged in gainful employment because she (2) is suffering from a severe impairment (3) that is listed in an appendix (or is equivalent to such a listed condition) or (4) that leaves her lacking the RFC to return to her previous employment (Reg. §§ 920(a) to (e)). If the claimant satisfies step 3, she is considered per se disabled. If the claimant instead satisfies step 4, the burden then shifts to the Commissioner at step 5 to show that other jobs exist in significant numbers in the national economy that the claimant could perform (Reg. § 920(f)).").

Thus, a claimant may demonstrate that his or her impairment is of sufficient severity to qualify for benefits in one of two ways:

(1)  by introducing medical evidence that the claimant is disabled *per se* because he or she meets the criteria for one or more of a number of serious Listed Impairments delineated in 20 C.F.R. Regulations No. 4, Subpt. P, Appendix 1, or that the impairment is *equivalent* to a Listed Impairment.  *See Heckler v. Campbell*, 461 U.S. 458, 460 (1983);  *Stunkard*, 841 F.2d at 59; *Kangas*, 823 F.2d at 777 (Steps 1-3); or,

(2) in the event that claimant suffers from a less severe impairment, he or she will be deemed disabled where he or she is nevertheless unable to engage in "any other kind of

substantial gainful work which exists in the national economy . . . ." *Campbell*, 461 U.S. at 461 (*citing* 42 U.S.C. § 423 (d)(2)(A)). In order to prove disability under this second method, plaintiff must first demonstrate the existence of a medically determinable disability that precludes him or her from returning to his or her former job (Steps 1-2, 4). *Stunkard,* 841 F.2d at 59; *Kangas*, 823 F.2d at 777.  Once it is shown that he or she is unable to resume his or her previous employment, the burden shifts to the Commissioner (Step 5) to prove that, given plaintiff's mental or physical limitations, age, education and work experience, he or she is able to perform substantial gainful activity in jobs available in the national economy.  *Campbell*, 461 U.S. at 461; *Boone v. Barnhart*, 353 F.3d 203, 205 (3d Cir. 2003); *Stunkard*, 842 F.2d at 59;  *Kangas*, 823 F.2d at 777.

### Vocational Expert - Hypothetical Questions

The determination of whether a claimant retains the RFC to perform jobs existing in the workforce at step 5 is frequently based in large measure on testimony provided by the vocational expert.  *Rutherford*, 399 F.3d at 553, citing *Podedworny v. Harris*, 745 F.2d 210, 218 (3d Cir. 1984) (citations omitted).  Where a hypothetical question to the VE accurately sets forth all of a claimant's significant impairments and restrictions in activities, physical and mental, as found by the ALJ or as  uncontradicted on the medical record, the expert's response as to the existence of jobs in the national economy which the claimant is capable of performing may be considered substantial evidence in support of the ALJ's findings on claimant's RFC. *See, e.g., Burns v. Barnhart*, 312 F.3d 113, 123 (3d Cir. 2002), *citing Podedworny*, 745 F.2d at 218 *and Chrupcala v. Heckler*, 829 F.2d, 1276 (3d Cir. 1987) (leading cases on the use of hypothetical questions to

VEs).[3]  *See also Plummer*, 186 F.3d at 428 (factors to be considered in formulating hypothetical questions include medical impairments, age, education, work experience and RFC); *Boone*, 353 F.3d at 205-06 ("At the fifth step of the evaluation process, 'the ALJ often seeks advisory testimony from a vocational expert.'").  Objections to the adequacy of an ALJ's hypothetical questions to a vocational expert "often boil down to attacks on the RFC assessment itself." Rutherford, 399 F.3d at 554 n.8.

Additionally, the ALJ will often consult the Dictionary of Occupational Titles ("DOT"), a publication of the United States Department of Labor that contains descriptions of the requirements for thousands of jobs that exist in the national economy, in order to determine whether any jobs exist that a claimant can perform." *Burns v. Barnhart*, 312 F.3d 113, 119 (3d Cir. 2002); see also *id.* at 126 (The "Social Security Administration has taken administrative notice of the reliability of the job information contained in the [DOT].") (citing 20 C.F.R. § 416.966(d) (2002)).  While an unexplained conflict between a VE's testimony and the relevant DOT job descriptions does not *necessarily* require reversal or remand of an ALJ's determination, the Court of Appeals for the Third Circuit requires the ALJ to address and resolve any material inconsistencies or conflicts between the DOT descriptions and the VE's testimony, and failure to do so will necessitate a remand.  *Boone*, 353 F.3d at 206.

Multiple Impairments

Where a claimant has multiple impairments which, individually, may not reach the level of severity necessary to qualify as a Listed Impairment, the ALJ/ Commissioner nevertheless

---

[3]        Conversely, because the hypothetical question posed to a vocational expert "must reflect all of a claimant's impairments," *Chrupcala*, 829 F.2d at 1276, where there exists on the record "medically undisputed evidence of specific impairments not included in a hypothetical question to a vocational expert, the expert's response is not considered substantial evidence." *Podedworny*, 745 F.2d at 218.

must consider all of the claimant's impairments in combination to determine whether, collectively, they meet or equal the severity of a Listed Impairment. *Burnett*, 220 F.3d at 122 ("the ALJ must consider the combined effect of multiple impairments, regardless of their severity"); *Bailey v. Sullivan*, 885 F.2d 52 (3d Cir. 1989) ("in determining an individual's eligibility for benefits, the 'Secretary shall consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity,'"), *citing* 42 U.S.C. § 423(d)(2)(C), and 20 C.F.R. § § 404.1523, 416.923).

Section 404.1523 of the regulations, 20 C.F.R. § 404.1523, Multiple impairments, provides:

> In determining whether your physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility under the law, we will consider the combined effect of all of your impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity.  If we do find a medically severe combination of impairments, the combined impact of the impairments will be considered throughout the disability determination process.  If we do not find that you have a medically severe combination of impairments, we will determine that you are not disabled (see § 404.1520).

Even if a claimant's impairment does not meet the criteria specified in the listings, he must be found disabled if his condition is *equivalent* to a listed impairment. 20 C.F.R. § 404.1520(d). When a claimant presents more than one impairment, "the combined effect of the impairment must be considered before the Secretary denies the payment of disability benefits." *Bittel v. Richardson*, 441 F.2d 1193, 1195 (3d Cir.1971) . . . ."). To that end, the ALJ may not just make conclusory statements that the impairments do not equal a listed impairment in combination or alone, but rather, is required to set forth the reasons for his or her decision, and *specifically* explain why he or she found a claimant's impairments did not, alone or in combination, equal in severity one of the listed impairments. *Fargnoli ,* 247 F.3d at 40 n. 4,

*citing Burnett*, 220 F.3d at 119-20.

If the ALJ or Commissioner believes the medical evidence is inconclusive or unclear as to whether claimant is unable to return to past employment or perform substantial gainful activities, it is incumbent upon the ALJ to "secure whatever evidence [he/she] believed was needed to make a sound determination." *Ferguson*, 765 F.2d 36.

<u>Claimant's Subjective Complaints of Impairments and Pain</u>

An ALJ must do more than simply state factual conclusions, but instead must make specific findings of fact to support his or her ultimate findings. *Stewart*, 714 F.2d at 290. The ALJ must consider all medical evidence in the record and provide adequate explanations for disregarding or rejecting evidence, especially when testimony of the claimant's treating physician is rejected. *See Wier on Behalf of Wier v. Heckler*, 734 F.2d 955, 961 (3d Cir.1984); *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir.1981). He or she must also give serious consideration to the claimant's subjective complaints, even when those assertions are not confirmed fully by objective medical evidence. *See Mason v. Shalala*, 994 F.2d 1058, 1067-68 (3d Cir.1993); *Welch v. Heckler,* 808 F.2d 264, 270 (3d Cir.1986).

Pain alone, if sufficiently severe, may be a disabling impairment that prevents a claimant from performing any substantial gainful work. *E.g., Carter v. Railroad Retirement Board,* 834 F.2d 62, 65, *relying on Green v. Schweiker*, 749 F.2d 1066, 1068 (3d Cir. 1984); *Smith v. Califano,* 637 F.2d 968, 972 (3d Cir. 1981); *Dobrowolsky v. Califano*, 606 F.2d 403, 409 (3d Cir. 1979). Similarly, an ALJ must give great weight to a claimant's subjective description of inability to perform even light or sedentary work when this testimony is supported by competent evidence. *Schaudeck v. Commissioner of Social Security*, 181 F.3d 429, 433 (3d Cir. 1999), *relying on Dobrowolsky.* Where a medical impairment that could reasonably cause the alleged

symptoms exists, the ALJ must evaluate the intensity and persistence of the pain or symptom, and the extent to which it affects the individual's ability to work.  This obviously requires the ALJ to determine the extent to which a claimant is accurately stating the degree of pain or the extent to which he or she is disabled by it.  *See* 20 C.F.R. § 404.1529(c).  *Hartranft v. Apfel*, 181 F.3d 358, 362 (3d Cir. 1999).

But, if an ALJ concludes the claimant's testimony is not credible, the specific basis for such a conclusion must be indicated in his or her decision.  *See Cotter*, 642 F.2d at 705. Our Court of Appeals has stated:  "in all cases in which pain or other symptoms are alleged, the determination or decision rationale must contain a thorough discussion and analysis of the objective medical and the other evidence, including the individual's complaints of pain or other symptoms and the adjudicator's personal observations.   The rationale must include a resolution of any inconsistencies in the evidence as a whole and set forth a logical explanation of the individual's ability to work." *Schaudeck*, 181 F.3d at 433.

Subjective complaints of pain need not be "fully confirmed" by objective medical evidence in order to be afforded significant weight.  *Smith*, 637 F.2d at 972; *Bittel*, 441 F.2d at 1195.  That is, while "there must be objective medical evidence of some condition that could reasonably produce pain, *there need not be objective evidence of the pain itself*." *Green,* 749 F.2d at  1070-71 (emphasis added), *quoted in Mason,* 994 F.2d at 1067.  Where a claimant's testimony as to pain is reasonably supported by medical evidence, neither the Commissioner nor the ALJ may discount claimant's pain *without contrary medical evidence*. *Ferguson v. Schweiker*, 765 F.2d 31, 37 (3d Cir. 1985);  *Chrupcala v. Heckler*, 829 F.2d 1269, 1275-76 (3d Cir. 1987); *Akers v. Callahan,* 997 F.Supp. 648, 658 (W.D.Pa. 1998).  "Once a claimant has submitted sufficient evidence to support his or her claim of disability, the Appeals Council may not base its decision

upon mere disbelief of the claimant's evidence.  Instead, the Secretary must present *evidence to refute the claim.  See Smith v. Califano*, 637 F.2d 968, 972 (3d Cir.1981) (where claimant's testimony is reasonably supported by medical evidence, the finder of fact may not discount the testimony without contrary medical evidence)." *Williams v. Sullivan,* 970 F.3d 1178, 1184-85 (3d Cir. 1992) (emphasis added), *cert. denied* 507 U.S. 924 (1993).

In making his or her determination, the ALJ must consider and weigh all of the evidence, both medical and non-medical, that support a claimant's subjective testimony about symptoms and the ability to work and perform activities, and must specifically explain his or her reasons for rejecting such supporting evidence. *Burnett v. Commissioner of Social Security*, 220 F.3d 112, 119-20 (3d Cir. 2000). Moreover, an ALJ may not substitute his or her evaluation of medical records and documents for that of a treating physician; "an ALJ is not free to set his own expertise against that of a physician who presents competent evidence" by independently "reviewing and interpreting the laboratory reports . . . ." *Ferguson v. Schweiker*, 765 F.2d 31, 37 (3d Cir. 1985).

<u>Medical Opinions of Treating Sources</u>

"A cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight, especially 'when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time.' *Plummer*, 186 F.3d at 429 (*quoting Rocco v. Heckler*, 826 F.2d 1348, 1350 (3d  Cir.1987)) . . . ." *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000) (additional citations omitted). The ALJ must weigh conflicting medical evidence and can chose whom to credit, but "cannot reject evidence for no reason or for the wrong reason." *Id.* at 317, *quoting Plummer*, 186 F.3d at 429 (additional citations omitted). The ALJ must consider all medical findings that support a treating physician's

assessment that a claimant is disabled, and can only reject a treating physician's opinion on the

basis of contradictory, medical evidence, not on the ALJ's own credibility judgments,

speculation or lay opinion. *Morales*, 225 F.3d at 317-318 (citations omitted).

> Moreover, the Commissioner/ ALJ

>> must "explicitly" weigh all relevant, probative and available evidence. . . . [and] must provide some explanation for a rejection of probative evidence which would suggest a contrary disposition. . . . The [Commissioner] may properly accept some parts of the medical evidence and reject other parts, but she must *consider* all the evidence and *give some reason for discounting* the evidence she rejects.

*Adorno*, 40 F.3d at 48 (emphasis added; citations omitted). *See also Fargnoli,* 247 F.3d at 42-43

(although ALJ may weigh conflicting medical and other evidence, he must give some indication

of the evidence he rejects and explain the reasons for discounting the evidence; where ALJ failed

to mention significant contradictory evidence or findings, Court was left to wonder whether he

considered and rejected them, or failed to consider them at all, giving Court "little choice but to

remand for a comprehensive analysis of the evidence consistent with the requirements of the

applicable regulations and the law of this circuit. . . ."); *Burnett*, 220 F.3d at 121 ("In making a

residual functional capacity determination, the ALJ must consider all evidence before him. . . .

Although the ALJ may weigh the credibility of the evidence, he must give some indication of the

evidence which he rejects and his reason(s) for discounting such evidence. . . . 'In the absence of

such an indication, the reviewing court cannot tell if significant probative evidence was not

credited or simply ignored.' *Cotter*, 642 F.2d at 705.") (additional citations omitted).

<u>Medical Source Opinion of "Disability"</u>

However, a medical statement or opinion expressed by a treating source on a matter

reserved for the Commissioner, such as the claimant is "disabled" or "unable to work," is not

dispositive or controlling. *Adorno*, 40 F.3d at 47-48, *citing Wright v. Sulllivan*, 900 F.2d 675, 683

(3d Cir. 1990) ("this type of [medical] conclusion cannot be controlling. 20 C.F.R. § 404.1527

(1989) indicates that [a] statement by your physician that you are disabled or unable to work does

not mean that we will determine that you are disabled. We have to review the medical findings

and other evidence that support a physician's statement that you are disabled.") (internal citations

omitted).

 The rules and regulations of the Commissioner and the SSA make a distinction between

(I) medical opinions about the nature and severity of a claimant's impairments, including

symptoms, diagnosis and prognosis, what the claimant can still do despite impairments, and

physical or mental restrictions, on the one hand, and (ii) medical opinions on matters reserved for

the Commissioner, such as "disabled" or "unable to work," on the other. The latter type of

medical opinions are on matters which require dispositive administrative findings that would

direct a determination or decision of disability. *Compare* 20 C.F.R. §404.1527(a-d) (2002)

(consideration and weighing of medical opinions) *with* 20 C.F.R. §404.1527(e) (2002)

(distinguishing medical opinions on matters reserved for the Commissioner).

 The regulations state that the SSA will "always consider medical opinions in your case

record," and states the circumstances in which an opinion of a treating source is entitled to

"controlling weight." 20 C.F.R. §404.1527(b), (d) (2002).[4]  Medical opinions on matters reserved

---

   [4]  Subsection (d) states: "How we weigh medical opinions. Regardless of its source,
we will evaluate every medical opinion we receive. Unless we give a treating source's opinion
controlling weight under paragraph (d)(2) of this section, we consider [a list of] factors in
deciding the weight we give to any medical opinion." 20 C.F.R. 404.1527(d) (2002). Subsection
(d)(2) describes the treatment relationship," and states:

    Generally, we give more weight to opinions from your treating sources, since
    these sources are likely to be the medical professionals most able to provide a
    detailed, longitudinal picture of your medical impairment(s) and may bring a

for the Commissioner are not entitled to "any special significance," although they always must be considered. 20 C.F.R. §404.1527(e)(1-2) (2002). The Commissioner's Social Security Ruling ("SSR") 96-2p, "Policy Interpretation Ruling, Titles II and XVI: Giving Controlling Weight to Treating Source Medical Opinions," and SSR 96-5p, "Policy Interpretation Ruling, Titles II and XVI: Medical Source Opinions on Issues Reserved to the Commissioner," explain in some detail the distinction between medical opinions entitled to controlling weight and those reserved to the Commissioner.

SSR 96-2p explains that a "finding that a treating source's medical opinion is not entitled to controlling weight does not mean that the opinion is rejected. It may still be entitled to deference and be adopted by the adjudicator." SSR 96-29, Purpose No. 7. Where a medical opinion is not entitled to controlling weight or special significance because it is on an issue reserved for the Commissioner,[5] these Social Security Rulings require that, because an adjudicator is required to evaluate *all* evidence in the record that may bear on the determination

---

unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, *we will give it controlling weight*. When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (d)(2)(i) and (d)(2)(ii) of this section, as well as the factors in paragraphs (d)(3) through (d)(6) of this section in determining the weight to give the opinion. *We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion*.

20 C.F.R. § 404.1527(d)(2) (2002) (emphasis added).

[5]     SSR 96-5p lists several examples of such issues, including whether an individual's impairment(s) meets or equals in severity a Listed Impairment, what an individual's RFC is and whether that RFC prevents him or her from returning to past relevant work, and whether an individual is "disabled" under the Act.

or decision of disability, "adjudicators must *always* carefully consider medical source opinions about any issue, including opinions about those issues that are reserved to the Commissioner," and that such opinions "must *never* be ignored. . . ." SSR 96-5p, Policy Interpretation, (emphasis added). Moreover, because the treating source's opinion and other evidence is "important, if the evidence does not support a treating source's opinion on any issue reserved to the Commissioner and the adjudicator cannot ascertain the basis of the opinion from the case record, the adjudicator must make 'every reasonable effort' to recontact the source for clarification of the reasons for the opinion." *Id.*

A medical opinion also is not entitled to controlling weight where it is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques" or is "inconsistent with the other substantial evidence in [the] case record . . ." 20 C.F.R. § 404.1527 (d)(2). *See* note 4, *supra*. Where an opinion by a medical source is not entitled to controlling weight, the following factors are to be considered: the examining relationship, the treatment relationship (its length, frequency of examination, and its nature and extent), supportability by clinical and laboratory signs, consistency, specialization and other miscellaneous factors. 20 C.F.R. § 404.1527 (d)(1-6).

<u>State Agency Medical and Psychological Consultants</u>

Medical and psychological consultants of a state agency who evaluate a claimant based upon a review of the medical record "are highly qualified physicians and psychologists who are also experts in Social Security disability evaluation. Therefore, administrative law judges must consider findings of State agency medical and psychological consultants or other program physicians or psychologists as opinion evidence, except for the ultimate determination about whether [a claimant is] disabled." 20 C.F.R. § 404.1527 (f)(2)(I). See also SSR 96-6p: Titles II

and XVI: Consideration of Administrative Findings of Fact by State Agency Medical and

Psychological Consultants ("1. Findings of fact made by State agency medical and psychological

consultants and other program physicians and psychologists regarding the nature and severity of

an individual's impairment(s) must be treated as expert opinion evidence of nonexamining

sources at the administrative law judge and Appeals Council levels of administrative review. 2.

Administrative law judges and the Appeals Council may not ignore these opinions and must

explain the weight given to these opinions in their decisions.").

<u>        The Grids</u>

The Medical-Vocational Guidelines, or "grids,"  20 C.F.R. Pt. 404, Subpt. P, App. 2

(2002), come into play at the fifth step of the five sequential steps in the disability analysis, as

explained by the United States Court of Appeals for the Third Circuit in *Mason v. Shalala*, 994

F.2d 1058 (3d Cir. 1993):

> The fifth step is itself divided into two parts:
>
> First, the Secretary must assess each claimant's present job
> qualifications. The  regulations direct the Secretary to consider the
> factors Congress has identified as relevant: physical ability, age,
> education, and work experience. See 42 U.S.C. § 423(d)(2)(A); 20 CFR
> § 404.1520(f) (1982). Second, she must consider whether jobs exist in
> the national economy that a person having a claimant's qualifications
> could perform. 20 CFR §§ 404.1520(f), 404.1566-404.1569 (1982).

*Heckler v. Campbell*, 461 U.S. 458, 460-61 (1983) (footnotes omitted). Prior to
1978, the second question as to whether a job existed in the national economy
suitable to a claimant was generally determined through reference to testimony
by vocational experts. However, in 1978 the Secretary promulgated the
medical-vocational guidelines, commonly known as "the Grids." These Grids,
through use of a matrix incorporating a  claimant's physical ability, age,
education and work experience (the four factors Congress directed the Secretary
to assess), establish Vocational Rules for whether a job exists in the national
economy for a given claimant.

. . . "Where a claimant's qualifications correspond to the job

requirements identified by a [vocational] rule, the guidelines direct a conclusion
as to whether work exists that the claimant could perform." *Campbell*, 461 U.S.
at 462 (emphasis added).

994 F.2d at 1064 (parallel citations omitted).

The Medical-Vocational Guidelines "reflect the analysis of the various vocational factors

(i.e., age, education, and work experience) in combination with the individual's residual

functional capacity (used to determine his or her maximum sustained work capability for

sedentary, light, medium, heavy, or very heavy work) in evaluating the individual's ability to

engage in substantial gainful activity in other than his or her vocationally relevant past work."

20 C.F.R. Pt. 404, Subpt. P, App. 2 (2002), § 200.00(a), Introduction. Where all of these four

vocational factors coincide with all of the criteria of a particular rule, the rule directs a finding of

either disabled or not disabled. *Id.* In the application of these rules, a claimant's "residual

functional capacity (i.e., the maximum degree to which the individual retains the capacity for

sustained performance of the physical-mental requirements of jobs), age, education, and work

experience must first be determined."   20 C.F.R. Pt. 404, Subpt. P, App. 2 (2002), § 200.00(c).

The physical exertional requirements for sedentary, light, medium, heavy or very heavy

work carry the same meaning as in the Department of Labor's *Dictionary of Occupational Titles*,

and are defined in the social security regulations as follows:

> (a) Sedentary work. Sedentary work involves lifting no more than 10 pounds at
> a  time and occasionally lifting or carrying articles like docket files, ledgers, and
> small tools. Although a sedentary job is defined as one which involves sitting, a
> certain amount of walking and standing is often necessary in carrying out job
> duties. Jobs are sedentary if walking and standing are required occasionally and
> other sedentary criteria are met.
>
> (b) Light work. Light work involves lifting no more than 20 pounds at a time
> with frequent lifting or carrying of objects weighing up to 10 pounds. Even
> though the weight lifted may be very little, a job is in this category when it
> requires a good deal of walking or standing, or when it involves sitting most of

the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

(c) Medium work. Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work.

(d) Heavy work. Heavy work involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds. If someone can do heavy work, we determine that he or she can also do medium, light, and sedentary work.

(e) Very heavy work. Very heavy work involves lifting objects weighing more than 100 pounds at a time with frequent lifting or carrying of objects weighing 50 pounds or more. If someone can do very heavy work, we determine that he or she can also do heavy, medium, light and sedentary work.

20 C.F.R. § 404.1567 (2002); 20 C.F.R. § 416.967 (2002).

## III.    Discussion

In his brief in support of summary judgment, plaintiff makes the following two arguments:  First, plaintiff contends that the ALJ erred in applying the Grids in a "mechanical" fashion because plaintiff was only 118 days away from his 55th birthday and the ALJ never acknowledged that plaintiff's case was a "borderline" situation.  Second, plaintiff contends that the ALJ erred in failing to give the opinion of plaintiff's treating physician controlling weight.

As stated above, the ALJ found that plaintiff has an 8th grade education, a "limited" education, no transferable skills to light or sedentary work, and plaintiff was classified as "closely approaching advance age" status (age 44-50).  After applying these factors, the ALJ used the Grids (Rule 202.02) to determine that plaintiff was "not disabled."

However, as plaintiff points out, he was only 118 days short of being considered of

"advanced age" (age 55-59) at the time of the decision.  Had the ALJ determined plaintiff to be

of "advanced age" and applied the same vocational factors of age, education and lack of

transferable skills from prior work, plaintiff would have been found "disabled" pursuant to Rule

202.02 of the Grids.  Because achievement of a new age category would have resulted in a

different outcome, a "borderline" situation exists such that the ALJ should have, at a minimum,

addressed this fact.

Plaintiff is correct that the regulations, Social Security Rulings, and numerous Circuit and

District Court cases have recognized that the Grids should not be applied in borderline situations

like the one presented in this case.  While the Court will not reiterate all of them here, the Court

does note the following.

Under 20 CFR § 404.1563 of the Social Security Regulations, it states:

> We will not apply the age categories mechanically in a borderline situation.
> If you are within a few days to a few months of reach an older age category,
> and using the older age category would result in a determination or decision
> that you are disabled, we will consider whether to use the older age category
> after evaluating the overall impact of all the factors in your case.

Also, in *Lucas v. Barnhart*, the United States Court of Appeals for the Third Circuit has

reiterated that because plaintiff was 106 days from his 55th birthday at the time he was last

insured for benefits, the Commission erred in failing to discuss factual findings relevant to

Lucas' status as a "borderline" case and remanded for reconsideration of this question.  *Lucas v.

Barnhart*, 2006 WL 1626585 (3d Cir. 2006).  Upon remand, Mr. Lucas' benefits were awarded.

Furthermore, in *Kane v. Heckler*, the Court of Appeals held that the plain meaning of 20

CFR § 404.1563 dictates that where a claimant's age falls within a few months of the starting

date of an age category, the Grids should not be mechanically employed.  *Kane v. Heckler*, 776

F.2d 1130, 1133 (3d Cir. 1985).

Based upon the above cited cases as well as the language of the Regulation itself, this Court finds that the ALJ erred in failing to acknowledge or discuss the fact that a "borderline situation" existed regarding the use of the lower age category.  Accordingly, under the circumstances, the Court finds that this matter be remanded for further consideration.[6]

## IV.    Conclusion

The Court has reviewed the ALJ's findings of fact and decision, and determines that because the ALJ failed to account for the fact that plaintiff's age has resulted in a "borderline" situation thereby alleviating any need to mechanically apply the grids, the decision is not supported by substantial evidence.  Accordingly, the Court will grant Plaintiff's motion for summary judgment, deny the Commissioner's, and remand for additional proceedings consistent with this decision.

An appropriate order will follow.


s/Arthur J. Schwab
Arthur J. Schwab
United States District Judge

---

[6]The Court need not address plaintiff's argument regarding the weight the ALJ gave to the opinions of the treating physician.